UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHERIE GARMAN | * | CIVIL ACTION NO.: 11-2341 |
| | * | |
| VERSUS | * | SECTION |
| | * | |
| HELIX ENERGY SOLUTIONS GROUP, | * | |
| JAMES L. ARRUEBARRENA, ATTORNEY | * | |
| AT LAW, L.L.C., AND UNITED STATES | * | MAGISTRATE JUDGE |
| EQUAL EMPLOYMENT OPPORTUNITY | * | |
| COMMISSION | | |
| | * | |

**CIVIL COMPLAINT**

**NOW INTO COURT,** by and through undersigned counsel, comes claimant herein, CHERIE GARMAN, a person of the full age of majority and a resident of and domiciled in the State of Louisiana and domiciled in this State and a citizen of this Country, in her own right and who respectfully avers as follows:

1.

Made Defendants herein are:

a)  HELIX ENERGY SOLUTIONS GROUP, (hereinafter referred to as "Helix"), upon information and belief, a Texas Corporation, authorized to do and doing business in the State of Louisiana, having appointed CT Corporation System as its registered agent for service of process;

b)  JAMES L. ARRUEBARRENA, ATTORNEY AT LAW, L.L.C., (hereinafter referred to sometimes as "Arruebarrena") a Limited Liability Company having its principal place of business at 1010 Common Street, Suite 3000, New Orleans, Louisiana, 70112;

c)    UNITED   STATES   EQUAL   EMPLOYMENT   OPPORTUNITY
COMMISSION, (hereinafter referred to as "EEOC");

2.

Claimant, Cherie Garman, brings this suit pursuant to Title VII of the Civil Rights Act of 1964 which prohibits the Defendant, Helix, from discriminating against claimant herein based upon her race or gender, The Equal Pay Act of 1963 and the Civil Rights act of 1991 which entitles Claimant herein to monetary damages in the case of intentional employment discrimination.  Claimant, Ms. Garman, an African American female, while an employee of Helix, was repeatedly subjected to various types of discrimination and sexual harassment by her direct superiors, all employees and agents of Helix for whom Helix is vicariously, independently and directly responsible and liable.

3.

Ms. Garman, while employed by Helix as an oilfield diver, was required to use New Orleans International Airport as her point of exit and entry when traveling to work abroad. When working in the US territorial waters or international waters in the Gulf of Mexico, Ms. Garman's point of entry and exit was usually a heliport in the southern part of Lafourche Parish, Louisiana, which is in this District.  Lafourche Parish, Louisiana is also the Parish in which Ms. Garman is domiciled, and she suffered discrimination, sexual harassment, and the bulk of her damages here in Lafourche Parish.

4.

Ms. Garman repeatedly and continuously endured gender and race-based discrimination, as well as sexual harassment, while employed by Helix as an oilfield diver. The complained of discrimination and harassment of Ms. Garman by Helix occurred on drill ships, tension-leg platforms, semi-submersible drilling installations, and/or while actually submerged in the various oceans of the world. As Ms. Garman is a Jones Act seaman, being regularly exposed to the perils of the sea, it is averred that she should be treated as a ward of the Court, and entitled to special consideration and protection thereby.

5.

While employed by Helix, Cherie Garman was discriminated against because of her gender and/ or race. This discrimination prevented job advancement and pay increases and was manifested in Helix's refusal to allow Garman to pursue continuing education courses necessary to retain the certifications she had already earned. Once her certifications expired, Helix used the expiration as an excuse to refuse to raise her pay commensurate with her colleagues. Nevertheless, Helix forced Ms. Garman to perform all duties which she had previously performed, despite Helix's knowledge that it had prevented her from keeping her certifications current.

6.

While employed by Helix, Cherie Garman was discriminated against in that her

colleagues, some with less experience and training, were paid more than she was.

7.

While employed by Helix, Ms. Garman was sexually harassed by her direct superiors. Some instances involved lewd and crude comments being made about her, to her, and in her presence, and by her direct superiors.  Other instances involved pornography being sent to her, via email or otherwise, by her direct superiors and/ or colleagues.  The most striking instance of sexual harassment occurred when her direct supervisor (male) attempted for hours to gain entry to Ms. Garman's hotel room late one night, admitting that he had been drunk, and beating on her door violently, demanding to be let in.  At that time, Ms. Garman feared for her personal safety. She reported the incident to management, but to her knowledge, her former supervisor is still employed by Helix and no disciplinary action was taken against him.

8.

On March 1, 2011, Ms. Garman filed a Charge of Discrimination against Helix through the EEOC's New Orleans office.  Pursuant to the charges, the EEOC hosted a mediation on May 12, 2011 in Houston, Texas.

9.

At the mediation, the EEOC mediator had only the first page of EEOC form 5, which contained only counts I, II, and III of Ms. Garman's discrimination complaint.  Ms. Garman informed the mediator that she had filed addenda along with form 5, alleging many other counts

of discrimination.  However, the mediator refused to consider the other charges contained in Ms. Garman's original "Charge of Discrimination."  This failure represents either simple negligence or gross incompetence on the part of the EEOC.  Additionally, 180 days has now passed since Ms. Garman made her Charge of Discrimination.  It is averred that Ms. Garman now has the requisite "right to sue" and should now be allowed to proceed with her claims before this honorable Court.  Accordingly, the EEOC should be made to issue claimant a "Right to Sue" letter.

10.

Despite the fact that the EEOC mediator was only discussing the first three counts, Ms. Garman negotiated a $100,000 settlement for herself at that mediation, *pro se.*

11.

Two days before the mediation, Ms. Garman had spoken on the phone with attorney James Arruebarrena and his associate, Rachel Martin-Decklemann, both doing business as JAMES L. ARRUEBARRENA, ATTORNEY AT LAW, L.L.C..  It is undisputed that Cherie Garman never signed a contract with JAMES L. ARRUEBARRENA, ATTORNEY AT LAW, L.L.C..  On the day it took place, Decklemann called in and listened to the EEOC mediation by telephone.

12.

Pursuant to the EEOC mediation, Helix and Garman entered into a written settlement

agreement, which specified that Helix was to pay Garman $100,000.  Garman released and indemnified Helix in that agreement for any related claims, and was required to resign her position at Helix, effective immediately.

13.

Shortly after the mediation was concluded, and settlement reached, Arruebarrena sued Ms. Garman in Orleans Parish CDC, claiming breach of contract and fraud, and alleging entitlement to $40,000 of the $100,000 settlement as a contingency fee.  Arruebarrena forwarded a copy of his suit to Helix's counsel, threatening Helix and demanding that Helix refrain from distributing funds to Garman, as the settlement agreement required Helix to do.

14.

Despite the fact that Ms. Garman indemnified Helix for any related claims, such as Arruebarrena's claim for a 40% contingency fee, and despite the fact that Helix was on notice by undersigned counsel that Arruebarrena had no signed contract with Garman, Helix refused to tender the last $40,000 of the settlement to Garman.  Undersigned counsel corresponded with Helix's counsel and repeatedly made amicable demand for tender of the remaining funds, to no avail.  Helix has heretofore refused to honor the settlement agreement with Claimant herein.

15.

Upon information and belief, and although Ms. Garman has not yet been served, Helix has recently instituted a concursus proceeding in the Orleans Parish CDC.  However, a tender of

the disputed funds to the registry of the Orleans Parish CDC does not cure Helix's breach under the settlement agreement. In fact, Helix has now relinquished control of Ms. Garman's settlement proceeds and created new obstacles between Ms. Garman and the settlement money that Helix contractually and explicitly promised to pay directly to her.

16.

Helix has therefore failed to uphold the settlement agreement, and Ms. Garman argues that the agreement is now null and void. Ms. Garman hereby petitions this Court to allow her to prosecute her claim in this forum, including all allegations made in her original EEOC complaint. While it is conceded that Helix has tendered $60,000 of the agreed upon $100,000 settlement, it is averred that Helix has materially and substantially breached the settlement agreement such that it is upset, and Helix should only be entitled to a credit for the $60,000 actually tendered towards any judgment which may be rendered against it herein after trial on the merits.

17.

Despite the fact that Defendant, Arruebarrena, is charged with the knowledge that he must have a written, recorded contract (which he; admittedly, does not) in order to have standing to intervene and claim any portion of settlement funds of an alleged client, he chose to threaten Helix with litigation which caused a material breach in Ms. Garman's settlement agreement. Arruebarrena's interference in the settlement between Ms. Garman and Helix has damaged her

financially, professionally and emotionally, and she is entitled to compensation from Arruebarrena for these losses.

18.

In its suit against Ms. Garman, Arruebarrena alleged fraud and breach of contract. The very allegation that Ms. Garman perpetrated fraud, especially since it was published and broadcast wherever and however filings of the Orleans Parish CDC are publicized, are allegations of a crime, were made in bad faith, communicated to third parties, and have damaged Ms. Garman's good reputation. She is entitled to compensation from Arruebarrena for these losses.

19.

Ms. Garman prays that this Court order the EEOC to issue a "right to sue" letter such that Ms. Garman may proceed in this forum against Helix.

20.

Ms. Garman prays for an Order of this Court, staying all proceedings in JAMES L. ARRUEBARRENA, ATTORNEY AT LAW, L.L.C. v. Cherie Garman, Orleans Parish CDC Docket No. 2011-5002, Section "C" (10) until the conclusion of this proceeding. Alternatively, Ms. Garman prays that said case be removed to this Court, and joined / merged with this case under this case's original docket number.

21.

Ms. Garman prays for an Order of this Court, staying all proceedings in Helix v. JAMES L. ARRUEBARRENA, ATTORNEY AT LAW, L.L.C. and Cherie Garman, Orleans Parish CDC Docket No. 2011-8801, until the conclusion of this proceeding.  Alternatively, Ms. Garman prays that said case be removed to this Court, and joined / merged with this case under this case's original docket number.

22.

Your petitioner Ms. Garman prays for a trial by jury on all issues and that, after due proceedings are had, that she be awarded all damages that are reasonable in the premises, as well as attorneys' fees and costs, and all just and equitable relief to which she may be entitled, and this Court is empowered to grant.

Respectfully submitted;

*/s/ NICHOLAS J. ZERINGUE*_____
NICHOLAS J. ZERINGUE   (#25543)
Attorney at Law
311 Patriot Street
P.O. Box 759
Thibodaux, Louisiana 70302
Telephone: 985-447-7540, Fax: 985-493-7320
nicholaszeringue@att.net

*/s/ SAMUEL J. ACCARDO, JR.*_____
SAMUEL ACCARDO (#24007)
JOSEPH ACCARDO, JR. (#2297)
Accardo Law Firm, L.L.C.
325 Belle Terre Blvd., Suite A
LaPlace, Louisiana 70068
Telephone: 985-359-4300  Fax: 985-359-4303
accardo@rtconline.com
joeaccardo@comcast.net